| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:12-CR-80 |
| | § | |
| DIETRICK LEWIS JOHNSON | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Dietrick Lewis Johnson's ("Johnson") Motion Requesting a Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (#142), wherein Johnson states that he is being denied medical treatment for his chronic medical issues due to the Coronavirus Disease 2019 ("COVID-19") "lockdown." The Government opposes the motion (#143). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, and the applicable law, the court is of the opinion that the motion should be denied.

I. Background

Johnson's offense of conviction is summarized, as follows:

In early 2011, Johnson met a woman—the victim—on an Internet dating website. After the victim ended the relationship in December 2011, Johnson began stalking the victim by going to her residence and her place of employment. Johnson repeatedly contacted her by phone and text. Johnson was warned by the police on numerous occasions to stay away from the victim. From December 18, 2011, to January 16, 2012, the victim called the police ten times to report that Johnson was harassing her.

The victim subsequently installed video equipment on the exterior of her home. On January 28, 2012, Johnson was observed in her backyard with a flashlight, attempting to enter her garage. The police were called, and Johnson was located approximately one block from the victim's residence. Johnson admitted to being in the victim's backyard and was arrested. Johnson was charged with Third

   Degree Stalking, and an Emergency Protective Order was issued, ordering Johnson to stay away from the victim.

   On March 21, 2012, at approximately 6:45 a.m., Johnson went to the victim's place of employment. As the victim exited her vehicle, Johnson grabbed her at gunpoint, forcing her into the passenger's seat as he drove away in her car. Johnson forced the victim to call her boss to say she would not be coming to work. Thereafter, Johnson drove to a nearby parking lot to retrieve his vehicle and forced the victim to get into his car. Johnson drove them to his apartment where he instructed the victim to call the District Attorney's Office to drop the charges. Johnson further told the victim to call his mother and inform her that the charges had been dismissed and that Johnson and the victim were reconciling. Fearing for her life, the victim gave into Johnson's demands for sex. Johnson raped the victim, who suffered serious bodily injury. Eventually, Johnson took the victim back to her vehicle. Johnson was arrested on March 27, 2012, at his apartment, and a search of his vehicle revealed a loaded firearm.

   In Cause No. 4:12-CR-80, Johnson was charged in a three-count indictment with Carjacking, in violation of 18 U.S.C. § 2119; Possession of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). On August 7, 2012, Johnson pleaded guilty and agreed to a 240-month term of imprisonment pursuant to a binding plea agreement.

   While in custody, Johnson's outgoing mail was intercepted. Johnson asked a family member to send a firearm through the mail to another inmate who was going to kill the victim. Johnson was subsequently interviewed by law enforcement and acknowledged he wrote the letters. Johnson admitted that he asked his cousin to send a gun to a fellow inmate who was willing to "take care of Johnson's problem." Based on Johnson's conduct, he was indicted in Cause No. 4:13-CR-88 for Tampering with a Witness, Victim, or Informant, in violation of 18 U.S.C. § 1512(a)(2)(A). On October 15, 2013, Johnson pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement, calling for a 125-month term of imprisonment, which would run consecutively to his term of imprisonment in Cause No. 4:12-CR-80.

On November 15, 2013, Johnson was sentenced to a 365-month term of imprisonment, consisting of 240 months' imprisonment for Cause No. 4:12-CR-80 and 125 months' imprisonment for Cause No. 4:13-CR-88, such terms to run consecutively to one another, five years' supervised release, and a special assessment of $100.00. In June 2015, Cause No. 4:13-CR-88 was dismissed and the 125-month sentence vacated because the Indictment was returned after the grand jury's term had expired. Nevertheless, Johnson's 240-month term of imprisonment in Cause No. 4:12-CR-80 remains. Johnson is currently serving this sentence at the Canaan United States Penitentiary in Waymart, Pennsylvania ("USP Canaan"). Johnson's projected release date is December 23, 2030. As of April 16, 2020, according to Bureau of Prisons ("BOP") records, he had served approximately 32 percent of his full term sentence.

II.     <u>Compassionate Release</u>

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under

3

>section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, No. 20-1723, 2020 WL 4048690, at *1 (3d Cir. July 20, 2020); *United States v. Springer*, No. 20-5000, 2020

WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Johnson is foreclosed from obtaining relief because he has not submitted a request for compassionate release based on the circumstances raised in the instant motion to the warden of the facility where he is housed. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857

(2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have the authority to grant the relief Johnson requests. Moreover, even if Johnson had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In the instant motion, Johnson, age 55, contends that he is eligible for compassionate release due to his serious medical needs and the current conditions in the BOP due to COVID-19. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Johnson claims he has been suffering from bladder cancer since 2004 and has had multiple surgeries to remove the cancer in 2004, 2006, 2008, 2010, and most recently, in December 2019. He also asserts that he has been experiencing chronic pain at level 7. Johnson's Presentence

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Investigation Report ("PSR"), prepared on December 3, 2012, indicates that Johnson advised Probation that he was diagnosed and treated for bladder cancer in 2004 and that he received further treatment in 2006. According to the PSR, Johnson reported that, in 2008, his cancer returned and had spread to the lymph nodes under his arms. The PSR further reflects that Johnson stated that the cancer returned again in 2010 and his treatment consisted of "coating his bladder with chemotherapy." The PSR indicates that Probation obtained records from Johnson's urologist in 2012, who confirmed seeing him eleven times between March 2004 and March 2012 and indicated that Johnson's prognosis was good.

Johnson, however, maintains that on August 3, 2019, a cystoscopy revealed that his cancer had returned and that the doctor ordered an emergency surgery. Included with Johnson's motion is a record signed August 23, 2019, stating that three bladder polyps were found during a cystoscopy. Johnson attached a surgical record dated December 12, 2019, which states that Johnson "underwent transurethral resection of the entire area and surrounding tissue" and notes that the indication for surgery and preoperative and postoperative diagnoses were bladder cancer. Following surgery, Johnson was "in stable and good condition with no . . . complications to report." Johnson asserts that although he was supposed to have a cystoscopy three months after his December 2019 surgery, due to the BOP "lockdown" for COVID-19, he has not had this procedure. Johnson provides no medical documentation or pathology reports dated after his December 2019 surgery. Probation was unable to verify Johnson's current medical condition.

The Government, however, provided Johnson's medical records for the remainder of 2019 and into July 2020. The medical records reveal that although he had a malignant tumor of his urinary bladder and on March 26, 2020, a cystoscopy of his bladder had been ordered, on March

8

31, 2020, Johnson refused a follow up with the urologic specialist. On April 2, 2020, an administrative note stated that Johnson refused the appointment due to his fear of being exposed to COVID-19, but indicated he "is not having any acute urinary problems at this time." As the Government points out, on June 30, 2020, the records reveal that a urine dip stick test was performed showing clear urine, containing no blood, and his results were within normal limits.

As for Johnson's claim of having chronic pain at level 7, the medical records do not corroborate this assertion. He reported minor pelvic area pain following his surgery on December 12, 2019, but by January 14, 2020, he related that he was "feeling well," and the examining physician stated that there were "no signs of acute distress present." An additional record dated the same day by a nurse practitioner noted that Johnson "denies any current pain" and "did not offer any medical complaints." In any event, any pain he has seems to be well-controlled by medication. A pharmacist noted on April 1, 2020, that Johnson was prescribed naproxen for "Hand, Pain in joint, Low back pain, Pain in leg, unspecified." A medical record dated May 5, 2020, completed by a nurse practitioner, comments "Is on Naprosyn but % compliance is about 55%. Not using med constantly," adding "no acute pain today." Hence, Johnson's complaint of chronic pain appears to be greatly exaggerated. The Government further notes that Johnson is classified as a Care Level 2 inmate, which means he is stable but may require chronic care.

Probation further explains that according to the BOP's Implemented Modified Operations "inmate movement is still expected to allow, when necessary, for provisions of required mental health or medical care, including continued Sick Call." Specifically, while the internal movement of inmates is suspended, there are exceptions for medical and mental health treatment (including local medical trips). Probation reports that Johnson's medical conditions can be addressed by the

BOP, and it does not appear that he is being denied medical treatment due to COVID-19. Thus, Johnson's medical summary does not meet the criteria listed in the guidelines. There is no indication that his reported medical condition is terminal or substantially diminishes his ability to provide self-care. Rather, his health issues appear to be stable and well-managed by the BOP. Hence, Johnson has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence. Even if Johnson had provided evidence that he was suffering from such a medical condition, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, the defendant has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Johnson's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423

F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Johnson for any "other" reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Johnson's situation. Johnson is housed at USP Canaan. As of August 31, 2020, the figures available at www.bop.gov list 0 inmates and 0 staff members at USP Canaan as currently positive for COVID-19. The figures also indicate that 0 inmates have recovered, and no one has succumbed to the disease. Therefore, although Johnson expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB,

2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Thus, Johnson has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. The nature and circumstances of Johnson's offense of conviction entails his commission of carjacking after he stalked and harassed the victim, whom he previously dated, for several months. He ultimately abducted the victim at her workplace and forced her into her car at gunpoint, which he drove to the place where his car was parked. He then forced the victim at gunpoint to get into his own car, which he drove to his apartment where he forced her to call the District Attorney's Office to withdraw her previous charge against him for stalking. Upon completion of the call, while the victim was in fear of her life, Johnson forcibly raped her, inflicting serious bodily

injury. Law enforcement officers later discovered a loaded revolver in Johnson's vehicle. Johnson subsequently attempted to obstruct justice by sending letters from jail soliciting others to provide a firearm to be used by another individual to murder the victim and eliminate his legal problems. Johnson has an extensive criminal history, including prior convictions for sexual assault, breaking and entering occupied dwelling (2), grand theft auto, burglary, larceny from a person, armed robbery, aggravated stalking, malicious destruction of building, aggravated kidnapping with intent to commit sexual abuse, violation of a protective order, and possession of a deadly weapon in a penal institution. Johnson failed to comply with a previous term of probation and has a history of substance abuse. Furthermore, Johnson has completed only about a third of his 240-month sentence of imprisonment. Under the circumstances, the court cannot conclude that Johnson would not pose a danger to the safety of any other person or to the community, if released from confinement.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,559 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their

sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without the authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United*

14

*States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Johnson's track record is abysmal.

In short, Johnson has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at *4-5 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

III.    Prior Custody Credit

Johnson also challenges the manner in which the Federal Bureau of Prisons ("BOP") has calculated the length of his sentence. Johnson requests that the court credit the time he served in federal custody pursuant to a writ of habeas corpus ad prosquendum from the Collin County, Texas, Jail—from April 18, 2012 to November 13, 2012—toward his federal sentence. Johnson filed a similar motion on March 18, 2016 (#81), requesting credit for the time he served from March 26, 2012, to March 7, 2015, which the court denied as premature (#82).[2] The court's prior order directed Johnson to avail himself of the remedies available through the BOP before seeking further relief from this court. Nothing in Johnson's current motion indicates that he has submitted

---

[2] The court's prior order also noted that the proper procedural vehicle for such a request is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

a formal request to have his sentence computation reviewed by prison officials. Accordingly, Johnson's request that the court alter the BOP's calculation of prior custody credits is, again, denied for failure to exhaust administrative remedies.

IV.   Conclusion

In accordance with the foregoing analysis, Johnson's Motion for Compassionate Release (#142) is DENIED.

SIGNED at Beaumont, Texas, this 2nd day of September, 2020.

                                                          *Marcia A. Crone*
                                              MARCIA A. CRONE
                                        UNITED STATES DISTRICT JUDGE